Members of the Court, may it please you this morning, entering a special appearance for H. Wayne Hayes, who regrettably could not be with us this morning, I am Mary Wilkowsky. I'd like to reserve three minutes, please. The law is settled in this circuit that sovereign immunity does not release the government from its obligation to return the restitution plus interest that Mr. Hayes paid following an illegal conviction. This Court in 1994 said specifically that the recovery of wrongly paid fines is incident to the vacating and setting aside of the wrongful conviction. And that was this Court's decision in Telling v. United States. The Court said if Telling and Burnup prevail in setting aside their convictions, the wrongly paid fines would be automatically refunded without requiring a civil action and without regard to the limitations period for civil action. The Court continued and said, we reject the notion that a quorum novus petitioner must file a Tucker Act claim to reject, excuse me, to recover fines or restitution that stem from a wrongful conviction. In Telling, this Court neatly disposed of challenges to the return of monies following illegal convictions based on sovereign immunity, since the Tucker Act constitutes a waiver of sovereign immunity as to those claims. So even if a civil claim was required for Mr. Hayes to recover his restitution plus interest, the Court contemplated by specifically citing to the Tucker Act that it would be exempt from sovereign immunity challenge. In this case, there is no civil action to recover restitution. It's not been filed. It's not contemplated. Therefore, the issue is not even triggered. Now, the Court in Telnick also admits that the issue of latches remains in play. However, in not establishing a repose requirement, it clearly was not troubled by the possible length of delay in challenging the conviction or the sentence. And as this Wayne Hayes challenge has wended its way through numerous appeals during an 11-year process. That presumes the fact that the Ninth Circuit is not troubled by a repose requirement. That presumes a couple of things. First, that the Court was aware of the challenges to an underlying conviction and the sentence to take time to resolve, and that in the balance, the importance of remedying injustice to a vindicated defendant outweighs the government's interest in repose. In this case, the government's arguments that Mr. Hayes never provided notice is disingenuous under the best of circumstances. In fact, he was filing petitions for relief, specifically Rule 35, when he was in prison before his October 1997 release. Importantly, the bulk of the restitution monies were collected by the government after his release during that three-year period from January 1998 to October 2000. So, the government was on notice, although that's not a requirement. Beckner said specifically, it's not a requirement. There is not a litany of vowel shouts that's delivered to a vindicated defendant to ensure the return of monies lawfully belonging to that vindicated defendant. Nevertheless, in this case, the government was clearly on notice that H. Wayne Hayes was devoted, dedicated, tenaciously pursuing all of his legal rights and remedies, including the return of restitution that was unlawfully taken from him as a consequence of the illegal conviction. In Beckner, which was a district court of Louisiana 1998 decision, that court considered the Fifth Circuit's decision in Lewis as well as the Ninth Circuit decision in Telnick. And it considered both of the government's arguments that were raised, that are being raised before the court today. It found no difference between the government as a recipient of those restitution funds and third-party beneficiaries who received the funds. Beckner was not troubled by that at all. I would emphasize that the distribution of money came before there was a final judgment for restitution, a distinction which would suggest this case might be different than Beckner's. Is this case somewhat different than that? Not really, Judge Clifton. If you consider the fact that – if you consider that notice of an intent to challenge the legitimacy of the sentence should, by rights, have told the distribution of the funds, then no, not at all. Because we're talking about the issue of finality. At what point were Mr. Hayes' challenges final? Arguably, through today's hearing, Mr. Hayes' challenges are not final. Well, wouldn't that make any restitution impossible for the government to act upon? If it isn't enough for the conviction to be final, for an appeal to be unsuccessful, for a petition for the certiorari to be denied, is there any time that it's going to be final? I believe that the situation contemplated by Talnick and contemplated by the district court in Beckner is that the rights of the vindicated defendant take precedence over inconvenience to the government or any consideration of out of whose pocket that restitution must be made. Against – I think you're answering the question, no. There is no point in time at which the government can be confident that funds can be distributed and it will not face challenge for recovery of those funds. We're not prepared to argue beyond the facts of this case, which is that the government knew that Mr. Hayes' challenges were not complete, that the court had not issued a final decision concerning the sentence. Well, it had. The problem was it was still subject to a collateral effect. Exactly, and that he ultimately prevailed. Could you just go back one minute on the facts? When do you claim that they obtained the restitution funds from him? The restitution, Your Honor, was made after Mr. Hayes was released from prison. He was released from prison in October 1997 and – He was released because the conviction had been set aside? No, Your Honor. Why was he released? He completed his term of imprisonment. Okay, so what difference does it make that he was released from prison? Oh, because the government had not collected any significant restitution before Mr. Hayes was released. And so it was on notice before it released the first funds in January of 1998 that Mr. Hayes was challenging the illegal sentence. You mean that he was filing a habeas petition? Right. Yes, Your Honor. And so your position is that even though this money is disbursed, the government pension out of the treasury reimbursed your client with the full amount of that money that is disbursed to third parties? Plus interest and attorney's fees, yes, Your Honor. Of course. All right, thank you. Thank you, Your Honor. We'll give you three minutes, even though you used nine. Thank you, Your Honor. Good morning, Judge Reinhardt, Judge Thomas, Judge Griffin. Please support Harry Yee, Assistant United States Attorney, on behalf of the United States. I think it bears some clarification, Your Honor, up front that the cases cited by counsel for Mr. Hayes this morning deal with fines. And that's very different from... Well, there is a slight problem in the quote the counsel read where it said, fines and restitution. I think you're correct that the case dealt with an issue of fines. But I did check when counsel quoted one of our cases and said fines and restitution. The statement may have been broader than necessary, but... I think it was much broader than necessary, Your Honor, because the relief that was requested... Tellink v. United States, which is an uncertain case, and says we reject the notion that a quorum notice petitioner must file a Tucker Act claim to recover fines or restitution that stem from a wrongful conviction. Yes, Your Honor, I think the result in Tellink is that the controlling authority that the court cites there is only relevant to fines. Well, we're not always right in what we say. Excuse me, Your Honor? I said we're not always right in what we say. But sometimes it's binding until somebody else reverses it. Well, I think this case certainly is on that issue, Your Honor, as the court is treating this case as a quorum notice writ. I think that it's clearly distinguishable from the lower court case that's cited by U.S. v. Beckner, which dealt specifically with restitution. Judge Clifton already pointed out one of the important distinctions in that there was, in fact, a final judgment in this case, which was appealed to this court and then was denied to the Supreme Court. At what point would the United States, in good faith, make payment of restitution to these victims? I would also point out, Your Honor, the facts in this case are that there's not numerous parties that are victims out of this case. There were 10 people here in the state of Hawaii that received $77,000, which was part of a $400,000-plus restitution order by this court, which was also the result of a claim of over $1.5 million worth of fraud that occurred in this case. The clerk of the district court, along that point, which is basically saying that there are only $77,000 that was actually disbursed in reimbursements, that was the amount that was actually paid by Mr. Hayes to the district court clerk, and the district court clerk disbursed that money to the victims. What's the effect of that? Your Honor, if... Is that good to you or good to them? When it comes down to it, Your Honor, it wouldn't be difficult for Mr. Hayes to pursue a claim if he felt he had one for return of that restitution money against the people who actually received it. Your Honor pointed out that the restitution monies would actually be coming out of the district court. If restitution were awarded against the United States, that does raise the issue of sovereign immunity. So I'm somebody that gets a check from the clerk of the court, restitution for money I think I've lost because of the Ponzi scheme. Is there anything there that makes me liable for repayment of the money? I mean, I'm getting money from the clerk of the court. What do I know about criminal conviction? Are these people really subject to having the money taken back from them? Your Honor, that would be the subject of an action by Mr. Hayes to pursue against these parties. I mean, then what's the relevance that he can file a claim if it has no merit? You're telling us that, well, he could sue the other people. But that only has some meaning to us or to anyone if suing somebody means that you can do more than file a complaint. Well, Judge, I only raise that because if you look at the cases cited by opposing counsel or cited by Mr. Hayes, actually, in his proper brief, he cites Vennari, where the court had jurisdiction over the third party. The third party had notice. That was a married corporation. Had notice of the case before the court and was then subject to an order against it. In this case, the third parties weren't given notice of this action. They wouldn't be subject to an order of the court given that their due process rights would be violated if the court issued an order against the third parties. So it comes back to whether or not this court believes that. Okay, so we can drop that idea. And let me ask you another question. Do you think it makes any difference what the basis of the vacation of the conviction is? Or the reason that he's not retried? Is that in any way relevant? I mean, Judge Clifton pointed out that it's not a reversal on direct appeal. It's a collateral effect. It is a collateral effect. That's one question. I'm asking you a different question, which is, does it matter whether it's reversed, what the basis for reversal is for the vacation? Well, I think it goes even further than that, Your Honor. I think the substantive facts in this case are relevant. And the fact that retrial wasn't had because the evidence was no longer available. And that all this court did in reversing Mr. Hayes' conviction was to order a retrial on the case. The government chose not to pursue that given that Mr. Hayes had already served his time and the fact that the evidence wasn't available and would cost probably as much as what he's asking for here in terms of restitution. So you would say that's a separate basis for not ordering the government to pay the restitution? I would say that that's one of the factors that the court should consider in not ordering restitution against the government, Your Honor. I think the prevailing position by the government in this case is that sovereign immunity does apply. I think Judge Magistrate Kobayashi, in her order of October 29, 2001, clearly states that the court's decision in Benvenuti v. Department of Defense holds that the All-Risk Act does not waive the doctrine of sovereign immunity. And in this case, since sovereign immunity has not been waived and the court would be considering issuing an order requesting that the United States pay our Treasury $77,000 to Mr. Hayes, that that is in fact an attack on the sovereign immunity of the United States. But what happens to the fines? If fines are collected, are they not put in the Treasury also? Your Honor, fines were returned to Mr. Hayes. No, no. I asked about an amount of money equivalent to the fines was returned. But what happened to the funds that were paid as fines? Was that money not put into the Treasury? It was, Your Honor. So why isn't that the same problem of seeking money back from the Treasury? I believe, Your Honor, that because it was already returned and that any profit as a result of that was returned to Mr. Hayes. But it was returned out of the Treasury, right? Yes, Your Honor. So is it any different here? If the government were ordered for some reason, a court ordered the government to pay restitution as well as fines, that would come from the same source, would it not? It would come from the Treasury equally. It would come from the Treasury, Your Honor. However, the fines were repaid to Mr. Hayes as a result of voluntary action by the United States government without waiver of sovereignty. The doctrine of sovereignty still applies to the restitution as being argued before the courts. So that if you didn't voluntarily agree to repay the fines, you couldn't be ordered to? I think that we could be ordered to, Your Honor. Even though it comes out of the Treasury? Even though it comes out of the Treasury, because in that case, we have profited, Your Honor. I think the issue is whether the United States had profited from the restitution. In this case, restitution wasn't paid to the United States. The United States didn't profit from the wrongful conviction of Mr. Hayes. So you think that sovereign immunity doesn't apply where the claim is that the United States has wrongfully profited? Excuse me, Your Honor? Do you believe that sovereign immunity does not apply to claims that the United States has wrongfully profited by some action it took? I think that's the holding in Beckner, Your Honor. Was it Beckner or was it like 270,000? There's one case that has an amount of money, $270,000 case or something like that. 277. 277, Your Honor. And that was a forfeiture case, Your Honor. And, in fact, the United States did profit from that case because that money went into the Treasury. Right, but I guess I don't understand your sovereign immunity argument. I mean, are you saying that if the government profits, then it waives sovereign immunity? That doesn't make any sense to me. I mean, either you have sovereign immunity or don't, depending on the legal theory. So explain to me your sovereign immunity theory and what you have just been saying and the distinctions you're drawing between fines and restitution. I think that the distinctions between fines and restitution, Your Honor, are more practical. I understand that, but I guess I don't understand your position. Are you saying that the United States is immune from suit for a return of fines wrongfully taken? For fines wrongfully taken, Your Honor? Yes. No, I believe that the United States is responsible under Beckner for repaying those fines because the United States did receive a benefit from those fines. Okay. Now, let's assume that fines are, for the sake of argument, that fines are in restitution are held to be equivalent. Why wouldn't the same sovereign immunity analysis apply? Well, if they were held to be equivalent, Your Honor, I think sovereign immunity would apply. Well, but isn't that what Beckner treats? Beckner treats the restitution funds in the same way that he treats the fines. I'm not sure that Beckner is a sovereign immunity case. I don't see the distinction that draws. In fact, none of the cases dealt directly with sovereign immunity that are being cited by Mr. Cain. Beckner is clearly distinguished on several grounds. One is what Your Honor, Judge Clifton pointed to, and that is that the government had foolishly distributed the money. Let me put the question in a different way. I think what you've offered to us is a sovereign immunity argument and noted that the cases that Mr. Hayes discussed in his brief don't focus on that. He doesn't have a reply brief, so he hasn't discussed it. But what's your authority? Can you cite to us authority for the proposition that fines or restitution or both are inside or outside the sovereign immunity waiver? Is there any authority that discusses restitution or discusses retaining the fines in terms of sovereign immunity? Well, the only authority I can cite, Your Honor, is the case that's relied on by Judge Magistrate Kobayashi where she says in actions such as this where the All Writs Act is invoked, the court has held that it does not waive, the United States does not waive sovereign immunity when the All Writs Act is invoked. Well, how does your theory square with Rule 41G, which allows a person to get property back from the government? Excuse me, Your Honor? Well, I mean, under the Federalism of Criminal Procedure, a criminal defendant can bring a motion in district court to get property back from the government. If what you're saying is true, then the government will say, no, we're immune from sovereign immunity. Well, again, Your Honor, this is a collateral matter. This is not part of the direct appeal that Mr. Hayes raised. I'm trying to understand your sovereign immunity theory. I understand what's going on here, I think, but I don't understand your sovereign immunity theory. I'm not arguing with you. I'm just trying to understand how far it applies and what you're asserting because I don't see any particular authority for it. When you have the government wrongfully taking money or property, there is a remedy in some fashion, whether it's with the criminal court or the Tucker Act. There is a remedy, it seems to me. And you claim sovereign immunity. I'm just trying to understand your theory so I can address it. Your Honor, I would cite to the court Land v. Dollar, 330 U.S., 731, at page 739, which is a 1947 case. If a judgment resulting from a proceeding would expend itself on the public treasury, the proceeding is a proceeding against the sovereign and is subject to the doctrine of sovereign immunity. Well, you know, that's what my recollection was in general, although I haven't been able to find some of the cases, that even with the forfeiture cases, that they drew a line at whether it went into the treasury or not, that as long as the court held the money, that it could be recovered, but that once something went into the treasury, then there was a sovereign immunity claim. Now, the only problem with that is it doesn't allow you to distinguish between fines and anything else, because that would be true with fines also if they went into the treasury. Now, the question is, is there some other remedy for recovering fines that a court can bear for? Is it a Tucker Act claim and the court says, well, we're not going to make you go through the Tucker Act? Or what is it? I have the same problem that Judge Thomas has. That's what I was trying to ask about. What is the difference between saying, yes, it's okay to recover fines, and no, it's not all right to recover restitution? I could understand saying it's okay to recover money that isn't in the treasury, because it doesn't violate that general principle of when the public fisc is involved. But it's difficult to come up with a coherent explanation of this case and why we would say, yes, you can recover fines many years later, even though the money's in the treasury, and no, you can't recover restitution. Now, you offered the view that, well, maybe it's because in one case the government benefits, has benefited, and the other, it was just trying to do a good deed. But that's hardly an explanation of why sovereign immunity applies. There may be an explanation of why the money shouldn't be returned for some other reason. I would ask the court to enter into another level of analysis here, then, in that the money that was collected for restitution was collected and deposited with the court, the district court, the clerk's office. The National Fine Center, which is the basis of the Beckner case, doesn't exist anymore. That was done away with. So the money never actually went into the treasury. The United States was a conduit. Well, let me ask you. Sorry to interrupt you. I understand where you're going with that, I think. Let's assume the money had never been dispersed, but it's sitting over here with the clerk of court. Are you saying the defendant couldn't get that money back? No, Your Honor. Why? What's the practical difference on your sovereign immunity analysis? I'm actually saying that if the money were deposited here, and practically speaking, that money can never be dispersed for restitution based on collateral attacks, then we would have to return that money because we would be in control of that money. We're not in control of that money at this point. That money has been dispersed and has been dispersed. I believe the last payment made by Mr. Hayes was made before he, or a month after, he filed this writ. So, you know, practically speaking, there is no money to distribute. If there were money to distribute and we were holding on to it, yes, we would be subject to an order of this court to return that money. But for this court's order now, the United States… And sovereign immunity would not apply. Sovereign immunity doesn't apply to restitution orders where the government retains the restitution funds that are subject to being distributed. And sovereign immunity doesn't apply in terms of government fines. Right? Correctly. So now you're saying, but it does apply if the release sought is a reversal of the restitution order. Or an order saying that regardless of where the money is, the United States is responsible for it and you must pay it back to Mr. Hayes. I mean, I guess I can understand your argument. You're saying, well, really the remedy is the Tucker Act because it's a taping. And you can't order return of the money through the All Writs Act. I guess that might make some sense. But I'm just having some trouble with the analysis. Still, you run into the same problem analytically when you try to distinguish between fines and restitution. With respect to sovereign immunity, I think that in that case, they were telling where they said that we're not going to make you. We are going to use the Coram Novus or the All Writs Act as a vehicle. We're not going to make you go through the Tucker Act if you really have a valid claim. And he said fines or restitution, wisely or unwisely, and dictum or not dictum because it was a fines case. But I had always understood, and I may be wrong, that the reason you could return the money if you still had it in the court, whether it be a fine or restitution, a seizure, whatever it was, was that the dividing line was when it went into the treasury, that at that point it became part of a public fisc. And you couldn't sue for that money because of sovereign immunity unless there was some waiver. But you seem to be telling us that that's not true with fines. It's only true with restitution. And that's the analytical problem I think some of us at least are having with how sovereign immunity applies to this case. If you said you couldn't get the fines back because of sovereign immunity, it would be easy for me to follow the legal argument. I can't really follow it when you differentiate between fines and sovereignty, even though between fines and restitution, even though in both cases you have to go after the public fisc. Well, I believe you're on to the missing link there, is whether or not this Court would entertain entering an order against the United States for money it does not have right now. In that instance, I think sovereign immunity does apply. Well, the whole theory about the public fisc is that money is fungible. And once you put it in, it's no longer identifiable. So you're not seeking a return of that money. You're going after the treasury in general. But in this case, Your Honor, the money was never put in. I know, but you're going after the treasury to recover money the government took from you and gave away. That's the theory. All right. Well, it's not an easy legal concept. And there are other arguments other than sovereign immunity as to whether the plaintiff is entitled to get money back that's been paid in restitution. That's another question. But the legal one issue that has, I think, is all of us are concerned with is how we could write an opinion explaining when sovereign immunity applies and when it doesn't. Can I return to one issue before you sit down? I gather that your conceding the district court under these circumstances probably doesn't have the authority to order restitution from the third parties, right? Because they were not before the court. They were not before the court, and they're not before this court, Your Honor. Well, the reason I ask is because that's exactly what the Manchester judge said. She says Hays is now without a remedy for restitution paid from the criminal conviction. Where a conviction is vacated, a district court may order third parties to pay restitution paid in connection with the wrong conviction, citing Venneri. Now, Venneri, as you point out, I believe, the third party was in front of the court. But I gather you disagree with that part of the Manchester judge's order. I don't disagree with the Manchester judge's analysis there, Your Honor, because there was, in fact, notice given to the third parties. The third parties did appear. Some of their due process rights were observed in Venneri. They are not in this case. I think she makes that distinction. No, she says Hays is now without a remedy. A district court may order third parties to repay restitution, citing Venneri. And it goes on to say Venneri involved the petition for recovery of restitution. I'm just trying to understand the government's position on that. I mean, your position is that because the third parties have no notice in this case or are not formal parties to the suit, that neither the district court nor the Manchester judge acting under the aegis of the district court, nor this court has the authority to order them to pay the money back, right? I think that that clearly would violate the third party's rights. Yes. I mean, that's my view. But the Manchester judge said something different. That's why I wanted your take on it. I guess I read it differently, Judge. I read it differently. That's a possible outcome if the third parties were given notice of that proceeding. Or if they want to sue them separately. Or if Mr. Hays wants to sue them separately. But you don't agree with what the magistrate's order says as meaning that she or the district judge or we have any jurisdiction over the third parties in this particular case. Correct, Your Honor. All right. Thanks very much. Thank you. I'm not sure whether I can shed some light on the last and focal point of the court's consideration. However, I can tell the court that the Beckner court did address the issue of the government's dispersal of funds to those third parties. Because the government in that case raised the same argument. It said that it had no obligation to repay because it had dispersed to the victims and it no longer had the funds. And in that case, too, the government had neither logic nor authority to support this argument. In that case, Beckner's money was paid to the United States government through its agency. In this case, the government was controlling the dispersal of the funds through the clerk's office. Well, Beckner's pretty far afield. It's a magistrate judge decision from Louisiana. So I know it's about as much as we have in this area. It is. Tell me why you don't think you have a Tucker Act claim and why isn't that your argument? Because to require a vindicated defendant to go through all of the hoops, including filing suit under the Tucker Act, is precisely that type of machination and other filings that was not contemplated by this Court's decision in Tellman. I understand. I'm sorry. Maybe I didn't hear my question. Because your answer is, yes, we have a Tucker Act claim, but it's inconvenient, or no, we don't have a Tucker Act claim. We're legally precluded from doing so. Or maybe you haven't called that question a quorum. This Court has already rejected the notion that a quorum must file a Tucker Act. It's quite a different question. It's not whether you have to. You're right. Tellman speaks to that. Could you, if for some reason you wanted to go down that road, could you or do you have an understanding that you're barred for some reason? Or, as I suspect, you haven't thought that one through because you were intent on this case, not that case. But if for some reason you couldn't get relief from us, is the Tucker Act route open to you? Is that a possibility? Is there something that bars that claim? Given the language of the Tucker Act statute, I don't think that such an action is barred. I don't care. That makes sense. I'm just trying to work my way analytically through the sovereign immunity issue. It seems to me you probably have a Tucker Act claim because the idea would be the same thing. If you put money in trust with the United States, they disperse the funds, and the money is gone. You can't collect it from the third parties. It could be a variety of federal programs. And that remedy would be under the Tucker Act. Here, basically, you're saying you don't want to waive or maybe haven't thought about the Tucker Act, but you think you don't have to go that far because the Olivets Act gives you some protection. Is that a summary of what your position is? That's part of it. But in response to Judge Reinhart's consideration of the fungibility of money, in the public fist, there's money. It doesn't say Wayne Hays' restitution funds. So I'm saying that to require the filing of suit pursuant to the Tucker Act needlessly interjects another step. The public fist is the public fist. He has a claim, a legitimate claim, to the restoration, to be made whole as a consequence of his vindication through the criminal system. So I'm saying that requiring him to pursue civil remedies through the Tucker Act for the same pot of money is, in a sense, redundant and unnecessary when this Court clearly has the jurisdiction to order the same remedy. So that would put a different light on the case, that the sovereign immunity is not a problem because of the Tucker Act, that you have a right under the Tucker Act to sue for these funds. And as a matter of convenience, this circuit says that if you have a Tucker Act claim in these circumstances, we will recognize it under the All-Rich Act. I mean, whether that's, again, correct or what. But that's a different argument. It's that argument, I assume, that solves the sovereign immunity issue from your point, from your standpoint, if you come under the Tucker Act. But according to Telnick, which, again, is all we have to hang our hat on, it's not an issue of sovereign immunity because the Court is saying, hey, sovereign immunity is not implicated, and we're not going to require you to get your money back by going through the Tucker Act as a waiver. Are you familiar with Bakersfield City School District v. Boyer? I'm not, Your Honor. Well, that case says, after saying, the obstacle that now bars the way to the relief sought is that the specific funds in question have long since been dispersed to other applicants or have reverted back to the Treasury and are no longer available for payment to the District, as they were when it... Those are the facts. It then says, nevertheless, because the funds in question have been dispersed or have reverted to the Treasury, the writ cannot issue, assuming that they've been fitted from part of the family. This is because the doctrine of sovereign immunity prevents the District Court from ordering payments of funds which are no longer in existence in an action against a federal officer to grant such relief would be to infringe directly upon the immunity of the sovereign without its consent. So that's sort of the general rule, that once it's gone into the Treasury, and that's a Ninth Circuit case also, because it's been reverted to the Treasury, you can't sue unless there's an act that authorizes it. That's the sovereign immunity argument. Now, there may be some difficulty in reconciling what we've said in various lines of cases, although that's not the most unusual occurrence in the world. But the... That's... Bakersfield, I think, sits with the general rule that the government relies on, on sovereign immunity. And then some of these other cases, like Telling, may be either not easy to reconcile or may... Telling could depend on the fact that you might have a claim, or do have a claim, under the Tucker Act. And then there's no sovereign immunity problem. You know, Your Honor, I'm going to go back to one of your points to opposing counsel, which was does the basis for reversal impact on your argument related to sovereign immunity? And I'm going to answer that in a... I didn't mean that question to say it relates to sovereign immunity. I think it may relate to whether you should get the money back. Well, that's how I prefer to frame it anyway. Because if you consider the fact that the government, having the money in its hands, knowing that Hayes was pursuing his remedies through the court system, it knowingly dispersed funds that were not settled How can you say it's not settled when it's... when it's settled on direct appeal? If you wait for habeas, and even with anti-terrorism act statute limitations, I suppose there's some finite end to it. But habeas relief is something else again. So I think normally, we think of convictions of being final as when the direct appeal is exhausted. So I just... I have difficulty buying your argument that the government acted wrongfully in not waiting until Mr. Hayes decided either to waive or not file his habeas petition, particularly after he'd been released from prison. Judge Thomas, in any other case, I would not be able to stand before you and say the history of governmental malfeasance is outrageous in this case. And that's why I want to bring the court to my final point. And that is, the government went on for 14 pages in its responsive brief, highlighting this parade of horrible activities by Mr. Hayes and then declining to prosecute for a second time the case. Counsel represented to this court that the evidence was not available. We suggest to the court quite the contrary. The evidence finally was available because pursuant to the Freedom of Information Act, Mr. Hayes finally received 25 boxes, bankers' boxes full of materials that the government repeatedly represented under oath and indirectly to the court that did not exist, that were not available to Mr. Hayes during that first trial. Now, conspicuously absent from this courtroom this morning is an attorney who has faced the hot seat in the raft of this particular court on two other occasions, and that's Les Osborne. He is absent this morning because he got scalded by the 9th Circuit last time on this case because Hayes did get the materials that he swore the government did not have. So when counsel, follow-up counsel, steps before the court and says, hey, the evidence wasn't available so we had to drop the charges, wrong. The evidence was finally available to handle a vindication through the trial system and not just through the paper trail of appeal after appeal after appeal. So I would urge the court that in deciding whether or not to force Mr. Hayes to pursue yet further litigation, albeit in a civil arena, that it does consider the overt acts, the misdeeds of the government, in deciding whether it will force Mr. Hayes forward under Tucker or any other statute. That's the theory that, you know, not in every habeas case should government be forced to return restitution, but in the habeas case where the conviction was obtained by governmental wrongdoing, wouldn't that require, if that's your theory, one, would it require a remand to the district court to determine those facts, whether there was governmental wrongdoing or whether there was governmental fault in this case, and secondly, was the district court asked to rule on that basis when this petition was presented originally? You know, Your Honor, the court has to ask itself why this case keeps recurring, why Hayes is not finally adjudicated, and I would urge the court to consider just one matter that the Beckner courts seem to consider in another set of facts, and that is this, and I quote now from Beckner, it's interesting to note, however, that as a result of the government's opposition, the court denied Beckner bail pending appeal from the judgment that ordered the restitution, causing Beckner to be imprisoned for 10 months on that judgment, which was later annulled. And the court was speculating as to the outcome had the appellant failed to move to stay the execution of the restitution order. In other words, had he attempted to stay the restitution order, which is what the government was saying, that the defendant had an obligation to provide notice, move for a stay, etc. Beckner said, no, we're not going to impose that obligation on a vindicated defendant because of the harassment and the nonsense that had occurred at the district court level, and so by finding in an analogous setting that the district court was not the most receptive forum for legitimate arguments, particularly as it relates to governmental malfeasance, we'd urge the court to conclude that that set of facts is parallel to these, which is the Rule 35 went up on appeal, the Ninth Circuit sent it down on remand, the district court denied it again, forcing Hayes to go time and time again to this very forum. So the district court is not a welcome forum for Mr. Hayes, because the tall tale that's woven in the first 14 pages of the brief is boilerplate. We've seen it before. I've seen it for 10 years now. And you can't tell a tall tale once the materials that you've represented consistently don't exist have miraculously surfaced. I gather your answer is no, you don't think we should remand him. In a word, yes. Let me ask just one question. Do you agree with the government that only 77,000 have been suppressed? What are you seeking? A total of 125,000. That includes civil interest. So 77,000 plus civil interest. Which comes around to 125,000, plus attorney's fees. Plus attorney's fees. Thank you, Judge. And with Judge Alberson from the Third Circuit scrawling, we don't scrawl. He sat on our panel. Enlightened dialogue. All right. Thank you both very much. The case, just argued, will be submitted. The next case on the calendar is Tom Sun v. City and County of Honolulu.
judges: Reinhardt, Thomas, Clifton